THE PEOPLE *ex rel.* Patrick J. Carr, County Collector, Defendant in Error, *vs.* THE IMMANUEL HERALD PUBLISHING HOUSE, Plaintiff in Error.

*Opinion filed December 23, 1926.*

1. TAXES—*assessor must value lots separately.* Tax assessors, who alone have any authority to ascertain the value of property for taxation, are required to ascertain the value of each tract of land or lot separately; and this is a substantial requirement of the statute for the benefit of the tax-payer and is a condition precedent to the collection of any tax.

2. SAME—*court cannot make separate assessment where the assessor has assessed lots together.* Whether an assessment of two lots as one tract was made at the request of the property owner or by the assessor without such authority, the court has no power to divide the assessment by putting a value on each lot and enter judgment for part of the tax extended on the whole property, even though the collector acquiesces in the decision of the court that one of the lots is exempt.

3. SAME—*tax cannot be extended except on legal assessment.* The extension of taxes upon real estate is primarily against the property and not against the owner, and the basis of the apportionment of the tax is the assessment of each tract or lot, and no legal extension of a tax can be made except upon a legal assessment.

WRIT OF ERROR to the County Court of Cook county; the Hon. EDMUND K. JARECKI, Judge, presiding.

F. WILLIAM KRAFT, for plaintiff in error.

ROBERT E. CROWE, State's Attorney, and WILLIAM H. DUVAL, (HAYDEN N. BELL, of counsel,) for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

In his application for judgment for taxes of 1924 the county collector of Cook county included the south 115 feet of lots 15 and 16 of a subdivision of a part of section 11 in town 39, north, range 13 east of the third principal meridian, which had been assessed together as a single tract at $5000 and against which a tax of $428 was extended. Objections were filed by the Immanuel Herald Publishing House, in whose name the property was assessed, and were sustained as to lot 15 but overruled as to lot 16, and judgment against the south 115 feet of the latter lot was rendered for $200.05, the court finding that the south 115 feet of lot 15 was exempt from taxation; that a fair division of the assessed valuation of $5000 would be $2663 for the south 115 feet of lot 15 and $2337 for the south 115 feet of lot 16; that the tax of $428 is excessive against the south 115 feet of lot 16 and should not exceed $200.05. The objector has appealed and argues that both tracts are exempt, and that even though one, only, is exempt, the property having been assessed as one tract the court was without authority to divide the assessment and apportion the tax.

Section 1 of article 9 of the constitution requires the General Assembly to provide revenue by levying a tax so that every person or corporation shall pay a tax in proportion to the value of his, her or its property, such value to be ascertained by some person or persons to be elected or appointed in such manner as the General Assembly shall di-

rect, and not otherwise. In obedience to this command the General Assembly has provided for the election of assessors, who alone have any authority to ascertain the value of any property for taxation, and they are required to ascertain the value of each tract or lot separately. (*Howe* v.: *People,* 86 Ill. 288.) If an assessment upon which a tax has been extended does not comply with this requirement no power exists in any person, officer, board or other authority to correct it, but the constitution expressly prohibits any assessment in any other manner than that directed by the legislature. When the county court undertook to divide the assessment between the lots and fix by its judgment the valuation of each lot, the valuation so fixed was an assessment by the court and was void. The extension of taxes upon real estate is primarily against the property and not against the owner, and the basis of the apportionment of the tax is the assessment of each tract or lot, and no legal extension of a tax can be made except upon a legal assessment. (*Howe* v. *People, supra.*) The requirement of a separate assessment of each tract or lot is a substantial requirement of the statute for the benefit of the tax-payer, and we have held that a compliance with all material requirements designed for the security of the tax-payer is a condition precedent to the collection of any tax. *Cleghorn* v. *Postelwaite,* 43 Ill. 428; *Darling* v. *Gunn,* 50 id. 424.

Section 58 of the general Revenue law provides that all real property subject to taxation shall be listed to the owners thereof by such owners, their agents, county clerks or assessors or the county board, yearly, with reference to the amount owned on the first day of May of each year, and the same requirement is found in section 9 of the Revenue act of 1898. Section 66 of the general Revenue act requires the county clerk to make up in books the lists of lands and lots to be assessed, and provides, among other things, that when several adjoining lots in the same block belong to the same owner, they shall, at the request of the

owner or his agent, be included in one description. Where an asesssment is made of two lots under one description, as was the case here, it will be presumed that the officer followed the law and that the inclusion of the two lots under one description was made at the request of the owner. Such request, however, even if it might possibly estop the owner to claim that the property, or any part of it, was exempt, would not authorize a court to change an assessment made by the lawful authority, to make an assessment of a part of the property and return judgment against the part so assessed by the court for part of the tax extended against the whole property.

We do not pass upon the question whether any part of the property was exempt from taxation, because the defendant in error has presented no argument on that question. Counsel for the People acquiesce in the decision of the county court that a part of the property was exempt and devote their argument to the question of the power of the court to apportion the tax.

The plaintiff in error is a corporation organized under the laws of the State of Illinois not for pecuniary profit, the purposes of which are stated to be, "to print, publish and deal in books, magazines, periodicals and literature of a religious nature, or of any other kind or character, the proceeds and profits of which are to be devoted solely to religious and benevolent purposes." The evidence shows that its business is carried on at the premises in question by the president of the corporation and a staff of assistants, who make daily visits to the sick and poor of the neighborhood and endeavor to bring relief to those they find in distress, distributing religious literature and taking subscriptions for the *Immanuel Herald,* a monthly religious periodical of which the president of the plaintiff in error is editor; that there is a three-story brick house on each of the lots; that the houses are connected with each other on each floor by passageways, and are known as 3200 and 3202 Frank-

323—37

lin boulevard; that in the house at 3200 are the general offices of the corporation and the sleeping room of the president; that in the house at 3202 are the general headquarters and living and sleeping rooms of the deaconesses or assistants, and the lower floor has always been used as a common dining room for the occupants of both buildings, all of whom assist in the business of the corporation and give their exclusive time to it. One heating furnace, one gas meter and one laundry serve both houses. The president of the corporation, who was the only witness examined in the case, testified that there are no activities carried on by any of the occupants of either building otherwise than those authorized by the charter, and no occupant is paid any salary but each depends entirely for his living upon voluntary contributions made to the institution and receipts from subscriptions for the *Immanuel Herald* and other religious literature which is published by the plaintiff in error. There was no further evidence as to the character of the business conducted by the plaintiff in error or the religious and benevolent purposes which it serves. The testimony of the president of the corporation that no activities are carried on otherwise than those provided for by the charter conveys no information as to what those activities are and merely expresses the opinion of the witness that they are the carrying out of religious and benevolent purposes.

As this case is presented it is unnecessary to decide whether the plaintiff in error is an institution of public charity or a benevolent and charitable organization and whether the property here in question is actually and exclusively used for charitable and benevolent purposes.

The judgment of the county court will be reversed and the cause remanded.      *Reversed and remanded.*